49 CCPA
**Application of Elmer Carl KIEKHAEFER.**
**Patent Appeal No. 6740.**

United States Court of Customs and Patent Appeals.
March 9, 1962.

Andrus & Starke, Elwin A. Andrus, Milwaukee, Wis., for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN and SMITH, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1 and 2 in application Ser. No. 604,969, filed August 20, 1956, entitled "Forward Rake Gear Shift Outboard Motor." This application is a continuation-in-part of application Ser. No. 301,704, now abandoned, filed July 30, 1952. The structure disclosed in the instant application is similar to that disclosed in application Ser. No. 604,968, involved in Patent Appeal 6739, Cust. & Pat.App., 299 F.2d 866, decided herewith. The sole distinction between the two structures resides in the construction of the control rod and the manner in which it operates to move the clutch-actuating element rearwardly.[1] Appellant's gear shift mechanism is described in more detail in our opinion in Patent Appeal 6739.

In the instant appeal, appellant has disclosed a control rod forwardly raked approximately 20°. The actuating movement of the rod is an axial reciprocation within the motor housing parallel to the rake axis rather than rotation as in application Ser. No. 604,968. The lowermost end of the control rod in the instant appeal is V-shaped.[2] As the control rod is moved axially downward, the rearwardly and upwardly sloping control rod end surface engages and moves rearwardly the clutch actuating pin. (The gear shifting effect of such pin movement is described in our opinion in Patent Appeal 6739.) Claim 1 is exemplary and reads as follows:

"In an outboard motor which includes an underwater gear housing and a swivel pin for the pivotal support of the motor and steering on a forwardly-raked axis wherein the angle of intersection between said axis and a horizontal line directed rearwardly, having reference to the forward direction of propulsion, is substantially greater than 90°, a generally horizontal propeller shaft journalled within said housing and having a central axial bore parallel to said line and opening from the forward end of said shaft and within said housing drive means for said shaft including a forward and reverse clutch having a clutch member movable axially on said propeller shaft, an actuator pin for said clutch member slidable within said bore and having a forward end projecting from said bore and extending forwardly of said shaft, said pin having a forward position in which it effects the forward drive of the propeller shaft and a rearward position in which it effects the reverse drive of the propeller shaft, a spring biasing said pin in the forward direction, and manually operable control means for moving said pin rearwardly against said spring comprising a rod

1. Rearwardly, as here used, means away from the bow of the boat on which the motor is used. Forwardly, as later used, means toward the bow of the boat.

2. One side, the forward side, of the "V" lies parallel to the axis of the control rod. The other or rearward, clutch-actuating-pin-engaging side, slopes upwardly and rearwardly away from the control rod axis at an angle disclosed in the drawing to be approximately 40°. The disclosed degree of rake of the control rod axis is 20° inclination from the vertical, forwardly. These relationships place the horizontal propeller shaft at an angle of 110° with its downwardly and rearwardly extending drive shaft and at an angle of 70° with the rearward side of the lowermost end of the control rod.

carried within said housing for axial movement and having a cam surface engaging the projected forward end of said pin so that a given axial movement of said rod effects a rearward movement of the pin within the shaft, said rod being disposed generally parallel to said forwardly-raked axis and the movement of said cam surface with said given movement of the rod being partially in a rearward direction whereby the movement of the pin in the bore is effected with correspondingly less frictional resistance, said rod extending from the gear housing through said swivel pin, and said means including a handle operably connected to the upper end of the rod for control of the rod and movement of the pin."

The references relied on are:

Armstrong et al.    2,696,188    Dec. 7, 1954
     (Filed August 19, 1950)

Konig (German)    747,280    Sept. 18, 1944

Armstrong et al. discloses, inter alia, a gear shift mechanism substantially the same as that disclosed by appellant but differing therefrom, for the purposes of this appeal, in one respect, namely, in the Armstrong et al. device the axes of the control rod and the propeller shaft are perpendicular rather than at an angle of 110°.

Konig discloses an outboard motor having its motor unit positioned forwardly of the propeller unit, the motor unit being connected to the propeller unit by means of a forwardly raked cylindrical housing. The Konig specification is directed toward an "arrangement of carrying handles * * * on heavy outboard motors."

Two main advantages are alleged by appellant to result from the instant structure. Initially, appellant states that the forward rake of the control rod increases the angle between the control rod's beveled end surface and the axis of the propeller shaft and the clutch-actuating pin element. The downward component of force upon the pin is thereby reduced and, accordingly, so is the frictional force

tending to keep the pin from sliding within the propeller shaft. Secondly, in appellant's device the total rearward movement of the control rod is related to three factors: (1) the total movement of the control rod along its axis; (2) the angle of the control rod's end surface relative to the axis of the control rod; (3) the amount of rake of the control rod. In the Armstrong et al. device, however, the total rearward movement of the control rod is related only to factors (1) and (2). From these considerations appellant alleges that a given downward movement of the instant control rod would cause a greater rearward movement of the pin element than a similarly constructed control rod in the Armstrong et al. device. Conversely, it is alleged that to achieve a given rearward movement of the clutch actuating pin, appellant need not move the instant control rod axially as great a distance as that required in the Armstrong et al. structure. Resultant savings in the size of the motor housing and the overall cost of the motor are alleged by appellant.

The board affirmed the examiner's rejection of claims 1 and 2 as unpatentable over Armstrong et al. in view of Konig in the following manner:

"The examiner's position as stated on pages 3 and 4 of his answer is as follows:

" 'Exclusive of the forwardly raked drive shaft, Armstrong shows all of the structure positively set forth in these claims. The expedient of incorporating the forward raked teaching of Konig in the Armstrong et al. disclosure is not seen to be productive of any new or unobvious result. The actual mechanical changes involved would be within the purview of one skilled in the art and not amount to invention. The alleged improved actuation of the pin, as argued in regards to appellant's construction, would be inherent in the references varying, if at all, only in a matter of degree when the teachings of the Armstrong et al. and

Konig references are combined as indicated.'

\* \* \* \* \* \*

"We have carefully considered the arguments advanced by appellant and are not convinced thereby that the subject matter of the appealed claims is patentable over the disclosures of the references relied upon by the examiner.

\* \* \* \* \* \*

"We have carefully considered the advantages of the recited inclination of the control rod relative to the axis of the clutch actuating pin, as pointed out by appellant and shown on the sketch accompanying the brief, and are not impressed thereby as we believe the operating characteristics would be obvious to one skilled in the art and would inherently flow from the modification of the Armstrong et al. motor as suggested by Konig."

It can be seen from an analysis of claim 1 that no mention is made in this claim, nor is any structural relationship recited therein, that would support either of appellant's alleged advantages. The control rod is merely recited as having a "cam surface engaging the projected forward end of said [clutch-actuating] pin." The configuration of this "cam" is not recited. No beveled surface is mentioned, let alone any particular slope therefor.[3]

We feel that in view of the Konig disclosure of a forwardly raked outboard motor, it would be obvious for one skilled in the art to forwardly rake the motor structure disclosed by Armstrong et al. As we stated in In re Kiekhaefer, Patent Appeal 6739, handed down concurrently herewith, this would inherently involve, inter alia, forwardly raking the control rod structure, including such a rod as is disclosed by Armstrong et al. The structure recited in the appealed claims is not, in our opinion, patentable over the art relied on.

The decision of the board is affirmed.

Affirmed.

---

3. Clearly, if the rod's V-shaped end surface is beveled so that the angle between the rearward side of the "V" and the propeller shaft axis is approximately the same as in the corresponding Armstrong et al. device, it would be difficult to effect "movement of the pin \* \* \* with correspondingly less frictional resistance." If, however, said angle was made appreciably greater in the instant device than in the Armstrong et al. device, the pin *would* move with "less frictional resistance," but since the total movement necessary to achieve any given pin movement, if the angle of rake is kept constant, increases as this angle increases, it is difficult to see how appellant's second alleged advantage could be achieved with the latter configuration. It can readily be seen that only particularly specified configurations of the control rod's end surface will allow appellant's device to achieve the results attributed thereto.